IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CR-00045-NKL |
| ) | |
| EDWARD JEFFERSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**ORDER**

Before the Court is Defendant Edward Jefferson's Supplemental Motion for a New Trial [Doc. # 224]. The Court will construe this supplemental motion as a motion to reconsider the Court's previous denial of a new trial [Doc. # 221]. For the following reasons, the Court denies the motion.

On June 30, 2011, a jury found Defendant Jefferson guilty of the crime of conspiracy to distribute 5 kilograms or more of cocaine. [Doc. # 209.] On December 15, 2011, Jefferson filed this supplemental motion for a new trial, invoking Rule 33 of the Federal Rules of Criminal Procedure.

Rule 33(a) provides that "the Court may . . . grant a new trial [to a defendant] if the interest of justice so requires." Fed. R. Crim. P. 33(a). The trial court has broad discretion to grant or deny a motion for new trial based upon the weight of the evidence, and "the trial court can rely on its own reading of the evidence – it can weigh the

1

evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992) (quotation omitted). However, the trial court should exercise this discretion "sparingly and with caution" and only "if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002); *United States v. Anthony*, 537 F.3d 863, 867 (8th Cir. 2008).

Jefferson requests a new trial based on several alleged improprieties during the trial, including a violation of his right to an impartial jury due to the jury's composition, an improper Allen charge, and issues with witness credibility. Though Jefferson should have included all of his arguments in his first Motion for a New Trial, the Court is aware that he acquired legal representation after filing the first motion and thus the Court will, on this one occasion, consider the merits of the renewed motion.

### A. Jury Composition

Jefferson argues that his Sixth Amendment right to an impartial jury consisting of a fair cross section of the community was violated. Jefferson claims that the composition of the jury that convicted him on June 30, 2011, failed to reflect the "young black street culture" segment of the community with which Jefferson identifies. Because the jury failed to represent this "insular demographic group," Jefferson argues that he was unfairly convicted. Jefferson claims that this exclusion is actionable because a large discrepancy in jurors over a sustained period of time is sufficient to demonstrate that the underrepresentation is systematic and intentional.

2

However, Jefferson has no right to be tried before a jury of his own race, or segment of the community. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) *holding modified by Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). Jefferson only has the right to be tried before a jury that was selected in a non-discriminatory manner from a pool of jury members that reflects a cross section of the community. *Holland v. Illinois*, 493 U.S. 474, 477 (1990).

In *United States v. Jones*, 687 F.2d 1265, 1269 (8th Cir. 1982), the defendant claimed that he did not have an impartial jury because the venire, and later the jury, lacked a single African American and therefore did not represent a fair cross section of the community. *Id.* at 1268. The court found that despite the lack of diversity on the jury, the selection process for the venire was random and did not exclude an identifiable group, and therefore was constitutional. *Id.* at 1269.

Jefferson states no facts to show that there has been systematic exclusion of black or young jurors by the juror system, and does not even plead that there were no black or young jurors on the current jury.[1] Further, Jefferson concedes that "there may be little deliberate systematic exclusion by the Government." As Jefferson has not shown that the jury was selected in a discriminatory manner, or that the jury pool did not represent a

---

[1] Jefferson only states that the jury was "older and primarily white." The cases that Jefferson cite show that jurors were excluded from the jury pool for reasons unrelated to the ability of the individuals to serve on juries. *See Lockhart v. McCree*, 476 U.S. 162, 175 (1986) (a gender was completely excluded from the jury); *Glasser v. United States*, 315 U.S. 60, 64 (1942); *Taylor v. Louisiana,* 419 U.S. 522, 525(1975); *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (discriminatory use of peremptory challenges); *Smith v. State of Texas*, 311 U.S. 128, 131(1940) (arbitrary selection of jurors by commissioners). Jefferson failed to show that any of these situations exist in the present case.

cross-section of the community, he is not entitled to a new trial on that basis.

>   B.  **Allen Charge**

After approximately six hours of deliberation in Jefferson's four-day trial, the jury was given an Allen Charge.[2] Jefferson argues that the Allen Charge given in his case was coercive, leading the jury to reach a verdict of guilty only two hours after the Allen Charge was given.

Whether or not an Allen Charge is coercive depends on "(1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion." *United States v. Ybarra*, 580 F.3d 735, 738 (8th Cir. 2009).

Jefferson does not appear to dispute the content of the instruction. However, he does argue that the jury's deliberation for only two hours after receiving the Allen Charge is indicative of coercion. This argument is not supported by Eighth Circuit case law. *See United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003) (holding that an Allen Charge was not coercive when a verdict was rendered one hour after the instruction was given); *United States v. Washington*, 255 F.3d 483, 486 (8th Cir. 2001) (holding that an Allen

---

[2] The model Allen Charge for the Eighth Circuit: "There is no reason to think that another trial would be tried in a better way or that a more conscientious, impartial or competent jury would be selected to hear it. Any future jury must be selected in the same manner and from the same source as you. If you should fail to agree on a verdict, the case is left off and must be disposed of at some later time. Please go back now to finish your deliberations in a manner consistent with your good judgment as reasonable persons." *United States v. Ybarra*, 580 F.3d 735, 737 (8th Cir. 2009), *citing* Judicial Comm. on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 10.02, at 495 (2008).

Charge was not coercive though the jury only deliberated 45 minutes after receiving the instruction); *United States v. Warfield*, 97 F.3d 1014, 1021 (8th Cir. 1996).

Jefferson also argues that the jury's total deliberation of only eight hours points to coercion. However, this argument is also unfounded. In *Warfield*, the jurors deliberated for a total of less than five hours in a five day trial, and the court found the Allen Charge was not coercive. 97 F.3d at 1022; s*ee also Washington*, 255 F.3d at 486 (holding that an Allen Charge was not coercive in a four day trial where the jurors deliberated for a total of about four hours and forty-five minutes). Similarly, here, the Court finds that eight hours of deliberation after a four-day trial is not unreasonably short and thus is not suggestive of coercion.

Finally, the makeup of the jury cannot be considered as indicative of coercion as the jury was not selected in any discriminatory manner and did not violate Jefferson's constitutional rights.

In sum, the Allen Charge did not have a coercive effect considering the total length of the considerations, the length of considerations after the Allen Charge, and a lack of indicia in the record of coercion or pressure on the jury.

Jefferson also claims that the jury should not have received the Allen instruction at all as the jury did not expressly state they were deadlocked. However, this argument is not persuasive. In *Walrath*, the jury sent a note saying, "Your Honor, if, as a group having discussed all evidence and testimony, we cannot come to a unanimous decision, what is the next step." 324 F.3d at 970. The court decided the Allen Charge was

properly given. *Id.* The jury's note in *Walrath* stating they were unable to reach a unanimous decision is not substantively different from the current jury's note stating "We have agreed on four of the five counts. We have finished with two of the three defendants and one of the two counts on the remaining defendant. There is a juror with a differing opinion and it is a volatile and hostile situation." (Trial Transcript, p. 806). Both jury notes reflect an inability to reach a unanimous opinion. An inability to reach a decision by the required voting margin is, literally, the definition of a deadlocked jury. *Black's Law Dictionary* (9th ed. 2009). Therefore, giving the Allen Charge in Jefferson's trial was appropriate.

### C. Witness Credibility

Jefferson also reiterates his argument that Alejandro and Cindi Corredors' testimony was inconsistent and could not support the verdict in Jefferson's trial.

Jefferson correctly cites *United States v. Davis*, 534 F.3d 903, 912 (8th Cir. 2008), for the authority of this Court to weigh and evaluate the credibility of witnesses in determining whether a new trial is merited. However, *Davis* also tells this Court that "[t]he authority to grant a new trial should be exercised sparingly and with caution." *Id.* Also, "a motion for new trial based upon the weight of the evidence is disfavored." *United States v. Hawkins*, 548 F.3d 1143, 1148 (8th Cir. 2008). Further, in evaluating a motion for a new trial, "[t]he jury's verdict must be allowed to stand unless 'the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred." *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008), *citing United*

*States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir.2007). Finally, in *Davis,* the court held that even though the defendant could point to problems with the witnesses' credibility, the evidence was not so "lacking in probative force" that a new trial should be granted.

As in the Order of this Court dated November 14, 2011, the Court finds that there was sufficient evidence for a jury to find Jefferson guilty of conspiracy. The photo of Alejandro Corredor and Jefferson together, the record of phone calls between Corredor and Jefferson, Corredor's testimony concerning the coded language in the phone calls, and the drug ledger, taken in conjunction with Jefferson's guilty plea for possession of cocaine with intent to distribute during that same time frame, weighs in favor of the verdict. Further, this evidence is corroborated by Cindi Corredor's testimony. While the defendant may not find the Corredors' testimony credible, this Court may weigh and evaluate the credibility of the witnesses itself. Given the above evidence, the Court finds that the jury reasonably weighed the credibility of the various witnesses to reach a guilty verdict. Thus, there is enough evidence weighing in favor of the verdict that a miscarriage of justice has not occurred.

Accordingly, it is hereby ORDERED that Defendant Edward Jefferson's Supplemental Motion for New Trial [Doc. # 224] is DENIED.

                                                        s/ Nanette K. Laughrey
                                                       NANETTE K. LAUGHREY
                                                       United States District Judge

Dated: February 14, 2012
Jefferson City, Missouri